IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 3 0 2011

JAMES N. HATTEN, Clerk
By: /s/ Deputy Clerk

DON DRENNON-GALA,

    Plaintiff,

v.

ERIC HOLDER, U.S. ATTORNEY
GENERAL, U.S. DEPARTMENT OF
JUSTICE, FEDERAL BUREAU OF
PRISONS,

    Defendants.

CIVIL ACTION NO.
1:08-CV-3210-JEC

### ORDER & OPINION

This case is presently before the Court on defendants' Motion for Summary Judgment [47], defendants' Motion for Extension of Time to File Reply Brief [53], and plaintiff's Motion for Leave to File Sur-Reply [55]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion for Summary Judgment [47] should be **GRANTED**, defendants' Motion for Extension of Time to File Reply Brief [53] should be **GRANTED**, and plaintiff's Motion for Leave to File Sur-Reply [55] should be **GRANTED**.

## BACKGROUND

This case involves an alleged violation of plaintiff's privacy rights. (Compl. [1].) Plaintiff is a former employee of the Federal Bureau of Prisons ("BOP"), a division of the Department of Justice ("DOJ"). (Defs.' Statement of Material Undisputed Facts ("Defs.' Facts") [47] at ¶¶ 1-2.) While he was employed by the BOP, plaintiff was the subject of two internal investigations. (Id. at ¶¶ 15, 35.) During the course of those investigations, plaintiff claims that private information from his Office of Worker's Compensation ("OWC") file was improperly released. (Compl. [1].)

The first investigation was conducted by Special Agent Edward Schott, on behalf of the BOP's Office of Internal Affairs. (Defs.' Facts [47] at ¶ 15.) The investigation concerned time and attendance irregularities, and a potential conflict of interest, arising out of plaintiff's employment as a paralegal in an employment discrimination case brought by another BOP employee.[1] (Id. at ¶¶ 15-16.) In conjunction with the investigation, Agent Schott requested plaintiff's OWC file, which was housed at the Federal Correctional Institute ("FCI") in Oxford, Wisconsin, where plaintiff formerly worked.[2] (Id. at ¶ 17.)

---

[1] The attorney who handled the discrimination case was Richard Samms, plaintiff's counsel in this action. (Defs.' Facts [47] at ¶¶ 15-16.)

[2] Plaintiff's OWC file was generated as a result of his prior worker's compensation claim. See Donney T. Drennon-Gala v. Dep't of Justice, Bureau of Prisons, Fed. Corr. Inst., Oxford, WI, No. 04-

2

Agent Schott's request was directed to Mary Rubel, an Employee Services Manager at the FCI. (*Id.* at ¶¶ 6-7.) As an Employee Services Manager, Ms. Rubel is required to assist agents from the BOP's Office of Internal Affairs with investigations that may result in disciplinary action against a BOP employee. (*Id.*) Consequently, when Ms. Rubel received Agent Schott's request, she obtained plaintiff's OWC file and forwarded it to Schott. (Defs.' Facts [47] at ¶¶ 19-20, 24.) The records in the file led Schott to conclude that the allegations against plaintiff could not be sustained. (*Id.* at ¶ 27.)

The second investigation was conducted by Special Agent Ronald Gossard, on behalf of the DOJ's Office of Inspector General. (*Id.* at ¶ 35.) Agent Gossard's investigation concerned plaintiff's potential misuse of position and credentials during incidents that occurred in June, 2006. (*Id.* at ¶¶ 34-35.) At some point during Agent Gossard's investigation, Agent Schott informed Gossard of his belief that plaintiff had falsified information to support his worker's compensation claim. (*Id.* at ¶¶ 36-40.) Agent Schott then shared plaintiff's OWC file with Gossard to assist in Gossard's independent investigation into the matter. (Defs.' Facts [47] at ¶¶ 42-43.)

According to plaintiff, either Agent Schott or Agent Gossard subsequently disclosed his OWC file to members of the public,

---

2190, 2005 WL 1352453. The claim culminated in a final order that was issued by the U.S. Department of Labor ("DOL") on April 26, 2005. *Id.*

3

specifically, individuals at the Chattanooga Police Department. (Defs.' Mot. for Summ. J. [47] at Ex. 2, p. 5-6.) The basis for this allegation is a sign that was posted in the Chattanooga Police Department instructing employees not to allow plaintiff into secure areas of the building. The sign stated:

> Please do not let a DON DRENNAN GALA go upstairs. He will flash a badge as if he is a Federal Agent, but he is not. He has some psychiatric problems. He came in today to see Shelley Parker and was escorted out of the building by two of the Captains. 6/30/06 Pat Gray per: Shelley Parker.

(*Id.* at Ex. 10.)

Shelley Parker is the individual responsible for posting the sign. (Defs.' Facts [47] at ¶ 62.) Ms. Parker directed that the sign be posted in response to an incident in which plaintiff refused to leave the building after being asked to do so. (*Id.* at ¶¶ 62-63.) During the incident, plaintiff stated that: "as a federal officer, I have the right to come into the building and talk to whomever I want to," and cited 5 U.S.C. § 8331(20)(a). (*Id.* at ¶ 64.) The law cited by plaintiff concerns pensions. *See* 5 U.S.C. § 8331(20)(a).

Plaintiff also claims that defendants disclosed the contents of his OWC file to Dr. John Vanyur and Edward Wolahan.[3] (Defs.' Mot. for Summ. J. [47] at Ex. 2, p.3.) Plaintiff's allegations concerning these disclosures are based on a conversation that plaintiff had with

---

[3] During the relevant time period, Dr. Vanyur was employed by the BOP as an Assistant Director of Correctional Programs. (Vanyur Decl. [47] at ¶ 1.) Mr. Wolahan was employed by the BOP as a Correctional Programs Specialist. (Wolahan Decl. [47] at ¶ 1.)

4

Mr. Wolahan sometime in October, 2007. (Pl.'s Decl. [50] at ¶ 60.) According to plaintiff, Mr. Wolahan asked during this conversation if plaintiff was "okay." (*Id.*) When plaintiff inquired as to why he was asking, Mr. Wolahan relayed to plaintiff that Dr. Vanyur had told him that plaintiff was no longer working at FCI as a result of some psychological problems. (*Id.*) Mr. Wolahan, however, denies ever asking, or being told, about plaintiff's mental condition. (Wolahan Decl. [47] at ¶¶ 3-4.) Nevertheless, from this conversation, plaintiff surmises that "someone" must have released his medical records to Dr. John Vanyur, and that Dr. Vanyur in turn disclosed the information to Mr. Wolahan. (Pl.'s Decl. [50] at ¶ 60.)

In sum, plaintiff cites the following disclosures in support of his action against defendants:

1) The safety manager at FCI released plaintiff's OWC records to Mary Rubel.

2) Ms. Rubel released the OWC records to Agent Schott.

3) Agent Schott provided the OWC records to Agent Gossard.

4) "Someone" released medical information from plaintiff's OWC file to Dr. John Vanyur.

5) Dr. Vanyur made statements to Edward Wolahan that came from the OWC file.

6) "Someone" released information from the OWC file to the Chattanooga Police Department.

(Pl.'s Decl. [50] and Defs.' Facts [47].) According to plaintiff, the above disclosures were made in violation of the Privacy Act, 5 U.S.C. § 552a(g)(4), the Rehabilitation Act (the "Rehab Act"), 42

5

U.S.C. § 12112(d), and Title VII of the Civil Rights Act of 1964. (Compl. [1].)

Defendants have filed a motion for summary judgment, which is presently before the Court.[4] (Defs.' Mot. for Summ. J. [47].) Defendants concede that they made the first three disclosures, but argue that the disclosures did not violate the law. (Defs.' Br. [47] at 1-6.) As to the latter three disclosures, defendants argue that (1) there is no evidence that the disclosures occurred and (2) even assuming that they occurred, the disclosures did not violate the law. (*Id.* at 7-14.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

---

[4] The parties have also filed related motions for an extension of time and to file a sur-reply. (Defs.' Mot. for an Enlargement of Time [53] and Pl.'s Mot. for Leave to File Sur-Reply [55].) The Court **GRANTS** both of those motions.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of some

7

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (1986)(emphasis in original).

## II. **Plaintiff's Title VII Claim**

The basis of plaintiff's Title VII claim is unclear. Based on various statements in plaintiff's declaration, the Court presumes that the claim is for retaliation. (*See* Pl.'s Decl. [50] at ¶ 47.) In order to make out a *prima facie* case of retaliation, plaintiff must show that: (1) he engaged in activity protected under Title VII, (2) he suffered an adverse employment action, and (3) there was a causal connection between the two. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Defendants argue that plaintiff cannot demonstrate any of the required elements of his *prima facie* case. (Defs.' Br. [47] at 24-25.) Defendants further contend that there is a legitimate reason to justify any adverse employment action that plaintiff claims to have suffered. *See Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).

Plaintiff does not respond to defendants' arguments concerning his Title VII claim. (Pl.'s Br. [50].) Indeed, plaintiff's pleadings ignore the issue of Title VII altogether. (*Id.*) Accordingly, the Court concludes that plaintiff has abandoned his Title VII claim, and **GRANTS** defendants' motion for summary judgment on the claim. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d

8

587, 599 (11th Cir. 1995)("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") and *Otu v. Papa John's USA, Inc.*, 400 F. Supp. 2d 1315, 1328 (N.D. Ga. 2005)(Thrash, J.)("[p]laintiff's failure to respond to Defendant's legal arguments relating to a claim alone constitutes abandonment of the claim").

### III. **Plaintiff's Privacy Act Claim**

In order to prevail on his claim under the Privacy Act, plaintiff must show that: (1) the government intentionally or willfully failed to properly maintain the records at issue, (2) which failure proximately caused an adverse determination, and (3) the plaintiff suffered actual damages as a result. *Perry v. Bureau of Prisons*, 371 F.3d 1304, 1305 (11th Cir. 2004). Defendants contend that plaintiff has failed to present any evidence that the alleged disclosures were "intentional" or "willful" or that he suffered actual damages as a result of them. (Defs.' Br. [47] at 14-19.) Defendants argue further that the disclosures were either authorized under an exception to the Privacy Act, did not occur, or concerned information already known to the public. (*Id.*)

9

### A. Evidence of "Intentional" or "Willful" Violations

The Privacy Act does not impose strict liability for every "technical" violation of its provisions. *Albright v. U.S.*, 732 F.2d 181, 189 (D.C. Cir. 1984). *See also Perry,* 371 F.3d at 1305. By its plain terms, the Act requires a showing of "willful" or "intentional" conduct. 5 U.S.C. § 552a(g)(4). This standard requires more than mere negligence, or even gross negligence. *Edison v. Dep't of the Army*, 672 F.2d 840, 846 (11th Cir. 1982). Rather, to recover under the Privacy Act, plaintiff must show that defendants "flagrantly disregarded" his rights under the Act, or that they acted in a "patently egregious" manner such that anyone should have known that their conduct was unlawful. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). *See also Albright*, 732 F.2d at 189.

Plaintiff does not present any evidence, or offer any argument, to suggest that any of the government agents or employees involved in this case acted "willfully" or with a "flagrant disregard" for his privacy rights. (Pl.'s Br. [50].) In fact, plaintiff ignores the element of intent altogether. (*Id.*) After a careful, independent review of the record, the Court finds no evidence to support this element of plaintiff's claim. Accordingly, the Court **GRANTS** defendants' motion for summary judgment as to plaintiff's Privacy Act claim.

### B. Evidence of Actual Damages

Even assuming that plaintiff could show intent, there is no evidence that plaintiff suffered actual damages. In the Eleventh Circuit, actual damages requires proof of pecuniary losses. *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872 (11th Cir. 2009). "Pecuniary losses" do not include "generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." *Id.* at 872-73.

Again, plaintiff does not respond to defendants' argument that he has failed to establish the damages element of his Privacy Act claim. (Pl.'s Br. [50].) Moreover, plaintiff admitted in discovery that he has no information to substantiate his claim to have suffered lost wages or other pecuniary losses as a result of the alleged disclosures. (Defs.' Mot. for Summ. J. [47] at Ex. 3, p.9-11.) Under binding Eleventh Circuit precedent, plaintiff's claims of "mental distress, embarrassment, shame, [and] damage to reputation" are barred from consideration. *See Fanin*, 572 F.3d at 872-73. For this additional reason, the Court **GRANTS** defendants' motion for summary judgment as to plaintiff's Privacy Act claim.

### C. The Alleged Disclosures

In addition to the above fundamental defects, it is clear that the alleged disclosures do not support any claim for relief under the Privacy Act. As discussed below, the internal disclosures were lawful under the Act. As to the public disclosures, (1) there is

insufficient evidence to permit a reasonable inference that they occurred and (2) assuming the disclosures occurred, they were likewise lawful. The Court thus **GRANTS** defendants' motion for summary judgment under the Privacy Act on these additional, alternative grounds.

### 1. Internal Disclosures

The Privacy Act contains several exceptions to its general prohibition against the disclosure of certain documents and information. See 5 U.S.C. § 552a(b). One such exception allows for the disclosure of records "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." Id. at § 552a(b)(1). The "need to know" exception authorizes disclosure where the records in question are necessary to make disciplinary decisions regarding the individual to whom the record pertains. Id. See also Hernandez v. Alexander, 671 F.2d 402, 410 (10th Cir. 1982)(applying the need to know exception). The Court agrees with defendants that the disclosures to Ms. Rubel, Agent Schott, and Agent Gossard fall under the need to know exception.

Plaintiff concedes that he was the subject of lawful investigations by Agents Schott and Gossard when the internal disclosures occurred. (Defs.' Facts [47] at ¶¶ 15, 35.) He admits, further, that the allegations under investigation were directly related to misconduct involving his worker's compensation claim.

(*Id.*)  The relevance of plaintiff's OWC file to both investigations is not in dispute.  (*Id.* at ¶ 27.)  Indeed, the records in the file led Schott to dismiss the allegations against plaintiff.  (*Id.*)  Under the circumstances, the need to know exception to the Privacy Act clearly applies.  *See Mount v. U.S. Postal Serv.*, 79 F.3d 531, 533-34 (6th Cir. 1996)(when individuals who are responsible for employment and/or disciplinary decisions have at least an arguable need to access medical records, disclosure of the records does not violate the Privacy Act).

Plaintiff argues that the need to know exception is not applicable because the DOL maintains the records in question, as opposed to defendants.  (Pl.'s Br. [50] at 9-10.)  This argument directly contradicts the allegations in plaintiff's complaint.  (Compl. [1] at ¶ 6.)  Moreover, if the Court were to accept this argument, it would negate another *prima facie* element of plaintiff's Privacy Act claim: that the agency fail to properly maintain the record in question.  *See Perry*, 371 F.3d at 1305.  If indeed it was the DOL that improperly disclosed plaintiff's OWC file, then plaintiff should have filed suit against the DOL, not the BOP and the DOJ.  *See also Hernandez*, 671 F.2d at 410 ("[i]f the records were maintained by [another agency] . . . and disclosed by it, such actions could not be the basis for liability here since plaintiff did not bring his civil action against that agency").

13

### 2. Additional Disclosures

While the above internal disclosures are admitted, defendants contend that there is no evidence to support plaintiff's allegations that defendants disclosed any information to the Chattanooga Police Department, Dr. Vanyur, or Mr. Wolahan. (Defs.' Br. [47] at 7-11.) Further, defendants argue that because the information allegedly disclosed was already public, plaintiff's Privacy Act claim must necessarily fail. (*Id.* at 11-14.) The Court agrees with defendants on both points.

### (a) There is no evidence of a public disclosure.

Plaintiff's allegation of an improper disclosure to the Chattanooga Police Department is premised entirely on the fact that the police department posted a sign indicating that plaintiff should not be allowed access to secure areas of the building because he had previously demanded access on the false premise that he was a federal agent and because he was believed to have psychiatric problems. (Defs.' Mot. for Summ. J. [47] at Ex. 2, p. 5-6.) The sign was posted by Shelley Parker in response to an incident in which plaintiff refused to leave the building when asked to do so and cited federal law that he claimed (incorrectly) gave him the authority to stay. (Defs.' Facts [47] at ¶¶ 62-64.) Plaintiff denies this account, and claims that he did not delay leaving when asked. (*See* Pl.'s Br. [50] at 15-16.) Consequently, plaintiff presumes that the only thing that could have led the police to conclude that he had

14

"psychiatric problems" was the disclosure of his OWC file. (*Id.*)

As a result of plaintiff's inadequate responses to defendants' statement of material facts, the Court must accept as true defendants' account of why the Chattanooga Police Department posted the sign concerning plaintiff. *See* L.R. 56.1(B)(2), NDGa. In any case, the evidence precludes a reasonable inference that any disclosure to the Chattanooga Police Department occurred. At the earliest, the disclosures at issue began in August, 2006, when Ms. Rubel first sent plaintiff's OWC file to Agent Schott. (Defs.' Facts [47] at ¶¶ 19-20.) However, the sign concerning plaintiff was posted by the Chattanooga police on June, 30, 2006. (Defs.' Mot. for Summ. J. [47] at Ex. 10.) Thus, the sign could not possibly be linked to any disclosure by Schott or Gossard.

As for the disclosures to Dr. Vanyur and Mr. Wolahan, plaintiff's allegations are based entirely on a vague account of a conversation in October, 2007, during which Mr. Wolahan allegedly asked plaintiff if he was "okay" and stated that Dr. Vanyur had indicated that plaintiff was having psychological problems. (Pl.'s Decl. [50].) Based on this conversation, plaintiff surmises that "someone" released his medical records to Dr. Vanyur, and that Dr. Vanyur disclosed the information to Mr. Wolahan. (*Id.*) However, plaintiff does not offer any specifics concerning who might have disclosed the information or when the disclosure occurred. *See Walker v. U.S.*, 1998 WL 637360 at *13 (E.D. La. 1998)(dismissing a

15

Privacy Act claim where the plaintiff failed to state when the information was disseminated or who disclosed it). Nor does he present any evidence to rebut both Dr. Vanyur and Mr. Wolahan's testimony that the alleged disclosures did not take place. (See Wolahan Decl. [47] at ¶ 4 and Vanyur Decl. [47] at ¶ 3.)

Plaintiff argues that he does not need direct evidence of a Privacy Act violation, as the circumstantial evidence in this case is sufficient. (Pl.'s Br. [50].) In support of this argument, plaintiff cites *Doe v. U.S. Postal Serv.*, 317 F.3d 339 (D.C. Cir. 2003). In *Doe*, the Court found that there was a genuine dispute of fact as to whether the plaintiff's supervisor had disclosed the plaintiff's HIV status to his co-workers. *Id.* at 342. However, the *Doe* court did not simply rely on the plaintiff's statement that a disclosure had occurred, but instead considered the testimony of one of the plaintiff's co-workers who said that "he first learned of Doe's HIV status from an acting supervisor." *Id.* Additionally, the court relied on testimony from "[t]hree other co-workers [who] said either that [the supervisor] had told them directly about Doe's HIV status or that they overheard [the supervisor] telling others of it." *Id.* There is no similar evidence in this case.

(b) <u>The information was already public</u>.

Even assuming the public disclosures occurred, they do not support a Privacy Act claim. The Privacy Act only protects against the public disclosure of information that has not yet been disclosed.

16

See *FDIC v. Dye*, 642 F.2d 833, 836 (5th Cir. 1981)(the "release of public information to the same 'public' is not a disclosure")[5] and *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975)(holding that there is no cause of action for invasion of privacy when the information is already available to the public). Information concerning plaintiff's "psychiatric condition" was already a matter of public record before any alleged public disclosure occurred.

As mentioned, the earliest disclosure occurred in August, 2006. However, the fact that plaintiff previously had been diagnosed with a "psychiatric condition" entered the public domain when the DOL issued its April 26, 2005 decision in plaintiff's worker's compensation appeal. *See Donney T. Drennon-Gala v. Dep't of Justice, Bureau of Prisons, Fed. Corr. Inst., Oxford, WI*, No. 04-2190, 56 E.C.A.B. 469, 2005 WL 1352453 (April 26, 2005). The opinion, which is available in print or online, states that plaintiff had been "diagnosed [with] anxiety disorder [and] clinical depression" and that his "persecutory ideation seemed an appropriate response to real threats." *Id.* at 471. Additionally, a separate psychiatrist was cited in the opinion as having diagnosed plaintiff with "a major depressive disorder and [an] anxiety disorder" *Id.* at 474.

Because the DOL decision is freely available to the public in

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business of September 30, 1981.

multiple formats, there is no question that the information contained therein was disclosed to the public upon its publication. *See Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1130-31 (9th Cir. 2006)("[o]nce information has been published on a website or print media, there is no further act required by the publisher to make the information available to the public"). As such, the public disclosures alleged by plaintiff are not actionable under the Privacy Act.

## IV. **Plaintiff's Rehab Act Claim**

Plaintiff's claim under the Rehab Act is similarly flawed. As an initial matter, the regulations that specifically govern the confidentiality of worker's compensation records state that the Privacy Act controls. *See* 20 C.F.R. § 10.10. The regulations provide that:

> All records relating to claims for benefits, including copies of such records maintained by an employer, are considered confidential and may not be released, inspected, copied or otherwise disclosed except as provided in the Freedom of Information Act and the Privacy Act of 1974.

*Id.*

Moreover, the confidentiality requirements of the Rehab Act only apply to two types of documents: (1) "voluntary medical examinations . . . which are part of an employee health program available to employees," and (2) authorized "inquiries [by an employer] into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B) and (C). The records at issue in this case do not

18

fall within either category. *See Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000)(discussing the parameters of the confidentiality provisions of the Rehab Act). Accordingly, the Court **GRANTS** defendants' motion for summary judgment on the Rehab Act claim.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motion for Summary Judgment [47], **GRANTS** defendants' Motion for Extension of Time to File Reply Brief [53], and **GRANTS** plaintiff's Motion for Leave to File Surreply [55]. The clerk is directed to **CLOSE** this action.

SO ORDERED, this 30 day of March, 2011.

_____
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE